## OVERWORK RESULTING IN NEGLIGENCE AND PERSONAL INJURY.

[Circuit Court of Summit County.]

INDIA RUBBER COMPANY v. VINCENT ANTHONY TOBIN.

Decided, April Term, 1902.

*Master and Servant—Negligence—Resulting in an Injury to an Employe—Who Was Overworked and Half Asleep—Assumption of Risk—Charge of the Court Insufficient, When.*

1. An employe exhausted and half asleep from overwork is not thereby relieved from the exercise of ordinary care and prudence to avoid injury.

2. One who is employed at a machine of the usual kind, which is adapted to the purpose and is in good repair, and of the construction and operation of which he has full knowledge, assumes the risk and danger incident to such employment. *Van Duzen Gas & Engine Co.* v. *Schelies*, 61 O. S., 298, distinguished.

3. The requirement that the charge of the court to the jury shall be confined to the law applicable to the facts of the case, which the evidence tends to establish, is not satisfied by a reference in a general way to the allegations set out in the petition, without explanation as to their bearing upon the controversy, or effort to distinguish the controlling points of the case from matter of less importance.

HALE, J.; CALDWELL, J., and MARVIN, J., concur.

Heard on error.

The case of the India Rubber Company against Tobin, error to the court of common pleas. We have encountered much difficulty in determining what ought to be done under this record, but after as mature consideration as we are able to give it, we have reached the conclusion which I will announce.

Tobin was in the employment of the rubber company as an ordinary workman, and was injured while in that employment. He seeks compensation of the rubber company for the loss he has sustained by reason of that injury, and says that is was caused by the negligence of the company, without his fault. The negligence charged, in substance is, that the manufactory had, as a part of its machinery, a machine known as a washer, which

consisted, in part, of massive corrugated iron rolls, less than three-quarters of an inch apart, at the end of which were large and powerful cogwheels by which these rolls were rotated; that the defendant was guilty of carelessness and negligence in not having appliances for stopping the rolls of said washer when in motion, and in not providing any safeguards or appliances for preventing those near the washer from being drawn into and injured by them; that the plaintiff was, at the time of the grievances hereinafter specified, an employe of the said defendant, subject to the orders and directions of one Charles Wheeler, a foreman of said defendant, and superior of plaintiff; that said plaintiff worked on a machine called a calendar, about three feet from said washer; that on or about April 17, 1893, the said defendant had a large amount of work to do, and was running its manufactory night and day, and said defendant carelessly and negligently did not at the time have a sufficient number of skilled operatives to run said calendar without requiring the plaintiff to work much longer each twenty-four hours than he was able to keep fully awake, as defendant then well knew. It is then alleged that by overwork Tobin became so exhausted that on this morning in which he was injured he was so sleepy and so completely exhausted that he was unable to take good care of himself, and being directed by this foreman, Wheeler, to wash his hands at this washer—which is said to be dangerous machinery—in performing that order, his hand was caught within the rollers and he received the injury that he complained of.

It will be noticed then that there are, in this petition, several distinct acts of negligence charged against this company.

Having read the pleadings to the jury, the trial court then said, after stating some propositions of law applicable to the case:

"The pleadings, to which I have called your attention, present for your consideration and determination three principal propositions, which are as follows:

"Was the defendant negligent in one or all of the acts complained of?

"If so negligent, was this negligence the proximate cause of the injury to plaintiff of which he complains?

"Did the negligence or the want of care on the part of the plaintiff contribute to cause or produce the injury which he sustained?"

Throughout this charge reference to the acts of negligence charged are only called to the attention of the jury by reference to the petition. No explanation of them, or what would constitute negligence in each particular case, is made except in a general way, as follows:

"Coming, therefore, to this case, you will first inquire whether the defendant was guilty of the negligence or some of the acts of negligence specified in the petition."

There are quite a number of references throughout the charge in that general way, and the trial court permitted these allegations of negligence in the petition all to go to the jury with the equal sanction of the court as a ground of recovery on the part of the defendant in error. A glance at those would show that some of them at least could not be the basis of any recovery. A statement of these issues is followed by a number of abstract propositions of law, but without explaining to the jury the application to the particular facts of the case then on trial.

Our Supreme Court has, in a number of cases, referred to charges of this kind; and in *Coal Company v. Estievenard*, 53 Ohio St., 43, 44, the court say:

"The charge of the court to the jury should not be as to abstract propositions of law, but should be confined to the law applicable to the facts of the case which the evidence tends to establish, and the attention of the jury should be called to the controlling point or points of the case, so that the verdict may not be founded upon unimportant matters."

And on page 59, the judge, in delivering the opinion of the court, says:

"The defect in the charge, on the question of contributory negligence is, that it is, in the abstract, dealing with generalities, and failing to deal with the facts of the case as claimed by the parties. Defendant below, by its requests, urged the court to say to the jury, that certain facts, if found by the jury, would pre-

vent a recovery, but the court refused to say what acts on part of plaintiff would defeat a recovery, and contented itself by telling the jury to look at all the evidence, to look at the knowledge of plaintiff, to look at his acts and conduct, etc., without telling them what use to make of such looking, or of the result thereof.''

The court, instead of the general propositions, should have called attention to the charges of negligence upon the subject of the machine, the washer, and explained to the jury if it was one in ordinary use in manufactories of that kind, and that the defendant in error had knowledge of that fact, knew about its operation, it was one of the risks he assumed, and could not be considered by them in determining whether the defendant was responsible or not, that the fact whether they had a large number or small number of men had nothing to do with the negligence of the company while this defendant was washing at the washer; and should have explained to the jury the effect of the exhausted condition and the bearing it had upon the questions at issue about which there was not a word said in the entire charge. The jury were permitted to find under this charge that the defendant company did not have men enough in its employment, and, therefore, responsible for this injury; that it did not have this washer properly guarded, and although the defendant in error knew all about it and assumed all risks of danger incident to its use, the company was responsible.

And it seemed to us that the jury were not sufficiently instructed as to the allegations of negligence, by saying, ''I refer you to the petition to determine what the allegations of negligence are and how to deal with them, under some general propositions that apply to the relation of master and servant.''

Upon this subject of the overwork the attention of the court was called to it by requests, which were refused—the eleventh and fourteenth requests. The fourteenth reads:

''If the plaintiff, at the time of the injury, was in a sleepy or exhausted condition, that fact will not relieve him from the exercise of ordinary care and prudence while using a machine dangerous to operate, and such care and prudence must have been commensurate with the obvious or apparent danger to be

apprehended from using the machine in question for the purpose for which he did use it; nor will such sleepy condition excuse him from failing to take reasonable precautions for his own safety while washing his hands at said washer.''

We think that charge should have been given. Whether his sleepy and exhausted condition enhanced the responsibility of the company in taking care of him, it did not excuse him from the exercise of ordinary care. It is barely possible that the charge covered this in a general way, that the defendant in error must be without contributory negligence himself, use all reasonable care to take care of himself, but on the effect of the particular condition he was in, nothing was said. We think the charge failed to get before the jury definitely the negligence charged in the petition, which could, under the facts of this case, have been made the foundation of a recovery.

Upon another subject the court charged the jury in these words:

''It is alleged in the petition, and evidence has been offered to you tending to show, that the plaintiff, at the time, or just before he received this injury, was ordered and directed by the foreman, Mr. Wheeler, to go to this washer and wash his hands, and that in obedience to said order and command he went to the machine called a washer, and while so engaged his hand was drawn in between the rollers and crushed. On that subject the rule of law is this: That one who, as a servant, does that in his employment which he is ordered to do by his master, and is injured by the culpable negligence of the latter, is not deprived of a right to recover for the injury by the fact that it was apparently dangerous, if a person of ordinary prudence would, under the circumstances, have obeyed the order, provided he used ordinary care in obeying it.''

A correct rule of law in a proper case. But the trial court applied to the facts of this case the proposition that is stated in *Van Duzen G. & E. Co.* v. *Schelies,* 61 Ohio St., 298.' This case is sometimes erroneously treated as stating an entirely new proposition recently discovered in fixing the relation between master and servant, and the tendency is to apply it indiscriminately to all kinds and classes of negligence cases in suits by the employe against the employer.

The rule stated in that case has no application whatever to a transaction in which the employe is ordered to work in a place of danger, the risk of which he assumed in entering into his employment.   It certainly is not negligence of the master to require or order the employe to work upon machinery, or in a place of danger, the dangers of which he assumed in his contract of employment.   In such a case the servant, not the master, continues to take the risk of the danger.   Now, in that case, on page 311, the court, in the opinion, says:

"At the time the injury occurred, he (that is, the complainant) was in the employ of the defendant as a 'vise-hand,' and had been called by the foreman to assist in the adjustment of a portable gasoline engine with pump and circular saw attached.   The saw was in motion at the time and not properly protected; and he was ordered to adjust the shafting of the pump, which was close and next to the saw.   He suggested that it was not safe to do so without stopping the saw.   The foreman peremptorily renewed the order; he obeyed, his clothing was caught by the saw and he was seriously injured."

As we understand it, as to the ordinary usual risks in the business in which the employe is engaged, there being nothing unusual, nothing out of the ordinary line, the rule there stated as to the orders of the master has no application; but if in the transaction between the master and the servant, either by what was said between them, or what was done between them, the fair inference is to be drawn that the master in that particular matter, and as to that particular act, assumed the risk of doing that thing, then he alone stands responsible and the employe is relieved, but it must relate to something out of the risk which the employe assumed in the nature of his employment.

An employe working at a machine dangerous in some respects, assumes the risk; and if he continues to work without any notification to the master, upon that machine when out of repair, he still would take the risk of its danger, but if he calls the attention of his employer to the defects and is promised a repair and continues, then the fair inference between them is that the servant is relieved for the time being from the assumption of risk for which he otherwise would be responsible.

Now, in this particular case it is shown beyond any controversy that this washer was of the usual kind used and proper in a manufactory of this kind, adapted to the purposes for which it was to be used, was in good repair; that the employe had full knowledge of all its construction and its parts. It required no skill to ascertain, apprehend and appreciate the dangers connected with it; he had washed at this very washer in this way, as the proof shows, many times, and we are constrained to say that he assumed, in this particular case, the risk and dangers connected with that employment and working about that machinery.

Again, in this particular case, the order that is shown in this proof was no more than a simple direction, if it existed at all, to this employe to go about the work in the usual way. It was a long time before he could be got to say, while on the stand, that the order was to him to wash at this particular washer. In our judgment nothing more took place here than a simple direction in the usual and ordinary course of doing that business; nothing to relieve the employe from the responsibility he assumed under his employment; and that the charge that I have read had no application whatever to the facts of this particular case.

The result of our investigation is that we hold that the charge of the court was misleading, and, therefore, erroneous; that the particular proposition of the charge that I have quoted as applicable to the case was erroneous; that the court erred in overruling the motion for a new trial because of the fact that the verdict is not sustained by sufficient evidence, and the judgment is reversed and case remanded to the court of common pleas for a new trial.

*Grant & Sieber,* for plaintiff in error.

*E. F. Voris* and *Rogers, Rowley & Bradley,* contra.